UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

MARALAGO CAY HOMEOWNERS
ASSOCIATION, INC., f/k/a
ARROWHEAD MOBILE
HOMEOWNERS ASSOCIATION,
INC., on behalf of themselves, the
class of current and former mobile
homeowners in the Park and all
others similarly situated,

      Plaintiff,               Case No.: 9:21-cv-80049-DMM

v.

MHC OPERATING LIMITED
PARTNERSHIP, EQUITY
LIFESTYLE PROPERTIES, INC.,
MHC MARALAGO CAY, LLC,
ERIC ZIMMERMAN, STANLEY
MARTIN, SYDNEY MORRIS,
RENE SCOTT, BEVERLY
SAGEHORN, BERTHA
RODRIGUEZ, MILAGROS RIVERA,
FLORIDA MANUFACTURED
HOUSING ASSOCIATION, INC.,
J. ALLEN BOBO, and LUTZ, BOBO
& TELFAIR, P.A., d/b/a LUTZ,
BOBO, TELFAIR, EASTMAN &
BOBO, f/k/a LUTZ, WEBB &
BOBO, P.A.,

      Defendants.
_____/

**AMENDED COMPLAINT AND DEMAND
FOR JURY TRIAL
(ADA CLAIM OMITTED)**

1

**<u>TABLE OF CONTENTS</u>**                                    Page

I.    **INTRODUCTION**                                          3

    A.    Representative Action by the Maralago Cay HOA        5

    B.    The Nature of the Product or Service: "55 or Older" Mobile
       Home Park                                              5

    C.    Sam Zell, Chairman of Equity Lifestyle, Likes the "Oligopoly"
       Nature of the Mobile Home Park Industry                6

    D.    Geographic Area or the Market: Pasco County, Florida   6

II.   **DEFENDANTS**                                            7

    A.    The MHC/Equity LifeStyle Defendants                    7

    B.    The FMHA Trade Association Defendant                   9

    C.    The Lutz Bobo Law Firm Defendants                      10

III.  **JURISDICTION AND VENUE**                                10

IV.   **ACTS IN FURTHERANCE OF THE CONSPIRACY**                 11

    A.    Concealed Illegal Sale of the Park in Violation of Right of
       First Refusal                                          11

    B.    Extort Adoption of an Illegal Rental Agreement         13

    C.    Divert Resales to the Benefit of the MHC/Equity Lifestyle
       Defendants                                             19

    D.    Concealed Contaminated Water Supply From Home Purchasers   19

    E.    Fraudulent and Unreasonable Lot Rental Categories & Amount   20

    F.    Unreasonable Elimination or Reduction of Services      20

    G.    Unreasonable Restriction of Sub-lessee Terms to Six Months   23

V.    **COUNT 1:   FLORIDA ANTITRUST ACT**                      23

VI.   **JURY TRIAL DEMANDED**                                   28

The Maralago Cay Homeowners Association, Inc., in its representative capacity on behalf of itself, and more than 1,000 current and former mobile homeowners in the Maralago Cay Mobile Home Park ("Park"), by and through the undersigned counsel, bring this Complaint against these Defendants, divided into four defined relationships:

- The **MHC/Equity LifeStyle Defendants**: MHC Operating Limited Partnership, an Illinois limited partnership, Equity LifeStyle Properties, Inc., a foreign (Maryland) corporation, MHC Maralago Cay, L.L.C., a foreign (Delaware) limited liability company, Eric Zimmerman, an individual, Stanley Martin, an individual, Sydney Morris, an individual, Rene Scott, an individual, Beverly Sagehorn, an individual, Bertha Rodriguez, an individual, and Milagros Rivera, an individual;

- The **FMHA Trade Association Defendant**: Florida Manufactured Housing Association, Inc., a Florida corporation;

- The **Lutz Bobo Law Firm Defendants**: J. Allen Bobo, an individual, and Lutz, Bobo & Telfair, P.A., d/b/a Lutz, Bobo, Telfair, Eastman & Bobo, f/k/a Lutz, Webb & Bobo, P.A., a Florida corporation.

The individuals and entity defendants defined above are collectively referred to in this Complaint as "Defendants." The Plaintiff further alleges:

## I.   INTRODUCTION

1.   Beginning at a time uncertain, but as least as early as 2012, and continuing on through the present time, the Defendants have entered into and engaged in a conspiracy, combination, or concert of consciously parallel business conduct: a) in unreasonable restraint of trade and commerce within the State of Florida and elsewhere with effects in the State of Florida in violation of §542.18 of the Florida Antitrust Act of 1980; and b) to monopolize, attempt to monopolize, or combine or conspire with any other person or persons to monopolize any part of trade or commerce within the State

of Florida and elsewhere with effects in the State of Florida in violation of §542.19 of the Florida Antitrust Act of 1980, by agreeing to the following:

  A. Avoid and frustrate the Plaintiff's statutory right of first refusal to purchase the Park on behalf of itself and the mobile homeowners represented by the Plaintiff;

  B. Extort the Plaintiff into adoption of an illegal lot rental agreement;

  C. Divert resales to the benefit of the MHC/Equity LifeStyle Defendants;

  D. Concealed contaminated water supply from home purchasers;

  E. Imposed fraudulent and unreasonable lot rental categories and amount;

  F. Unreasonably eliminated or reduced services; and

  G. Unreasonably restrict sub-lessee rental terms to a maximum of six months.

Engaging in the business of owning and operating mobile home parks within the State of Florida constitutes trade or commerce within the meaning of the Florida Antitrust Act of 1980, Chapter 542, *Fla. Stat.*

2. As a result of the unlawful conduct, the elderly mobile home owners represented by the Maralago Cay Homeowners Association, Inc., suffered an antitrust injury resulting in damages in excess of $30,000.00. This conspiracy, combination, or concert of action resulted in higher mobile home lot rental prices paid by elderly natural persons for the use of mobile home park facilities than would have existed in a competitive market.

3. Defendants' unlawful conduct is continuing and unless equitable relief is granted artificially inflated mobile home lot rental prices for the use of mobile home park facilities will continue unabated.

4

**A.** **Representative Action by the Maralago Cay HOA**

4.     Plaintiff **Maralago Cay Homeowners Association, Inc. ("Maralago Cay HOA")** f/k/a Arrowhead Mobile Homeowners Association, Inc., is a Florida not-for-profit corporation with its principal place of business located in the Park at 6201 Holly Lane, Palm Beach County, Lantana, Florida. The Maralago Cay HOA is the legal representative under §723.075, *Fla. Stat.*, of all of the mobile home owners in the Park "in all matters relating to the Florida Mobile Home Act." *See* §§723.075(1) and 723.076(1) **and** in "matters of common interest." *Rule* 1.222, *Fla. R. Civil P.* The Plaintiff represents itself, and more than 1,000 current and former mobile homeowners in the Park. The relationship between the Maralago Cay HOA, the homeowners represented by the Maralago Cay HOA and the Park owner or operators is regulated under Chapter 723, *Fla. Stat.*, and encompasses a broadly defined "lot rental agreement" which includes, *inter alia*, a prospectus. (Exh. A is attached and adopted).

**B.** **The Nature of the Product or Service: "55 or Older" Mobile Home Park**

5.     The Park is an age 55 or older mobile home park with 603 mobile home lots. The Park is located at 6280 S. Ash Lane, Palm Beach County, Lantana, Florida. The mobile homeowners represented by the Maralago Cay HOA are largely elderly persons more than 65 years of age. The mobile homes are valued between $25,000 and more than $100,000. Most homes are paid for with cash, usually comprising all or a substantial amount of the homeowners' life savings. They lease the lot underneath their mobile home from the Park owner or operators.

**C.**   **Sam Zell, Chairman of Equity Lifestyle, Likes the "Oligopoly" Nature of the Mobile Home Park Industry**

6.     Approximately 1.8 million Floridians today live in a mobile home. In a 2014 Tampa Bay Times newspaper article, it was noted that the population of Florida mobile homeowners represents five times the entire population of the city of Tampa, Florida. Most of those homeowners earn less than $30,000 per year. Largely, those mobile homeowners are a captive audience: "... As Frank Rolfe, a park owner who runs [the[ Mobile Home University, a boot camp for investors, told *Bloomberg*, 'We're like a Waffle House where everyone is chained to the booths." *Mobile home park investors bet on older, poorer America*, Tampa Bay Times, May 19, 2014.[1] "Years ago, the mobile home industry was mostly ignored save for a few investment titans. Warren Buffet paid $1.7 billion in 2003 to buy Clayton Homes, one of America's largest mobile home conglomerates. Sam Zell, the billionaire chairman of Equity Lifestyle, said in a 2012 conference call he liked the 'oligopoly nature of our business.' " [referring to the mobile home park industry] *Id*. The MHC/Equity LifeStyle Defendants directly or indirectly own, control, or operate 77 age-qualified Florida mobile home parks with approximately 32,000 mobile home sites with gross revenues in excess of $230 million annually.

**D.**   **Geographic Area or the Market: Palm Beach County, Florida**

7.     Palm Beach County has a population of approximately 1.6 million persons. Twenty three per cent of the population is 65 years of age or older. There are 130 mobile home parks in Palm Beach County, Florida. Seventy three of those parks are "55 or older" mobile home parks which would market to a group of elderly retirees, such as those represented by the Maralago Cay HOA. The monthly lot rental amount varies by only a minor amount between the Park and the "comparables" used by the Defendants in rejecting the representative Maralago Cay HOA's attempts to negotiate mitigation of the

---

1      https://www.tampabay.com/news/business/realestate/mobile-home-park-investors-bet-on-older-poorer-america/2180277/

existing regular annual lot rental increases of four to five per cent.

## II.   DEFENDANTS

### A.   The MHC/Equity LifeStyle Defendants

8.   Defendant **MHC Operating Limited Partnership ("MHC Operating")**, is a foreign (Illinois) limited partnership, formed in 1993 with a principal address of Two North Riverside Plaza, Suite 800, Chicago, Illinois, which is also the Chicago corporate headquarters for Defendants Equity LifeStyle Properties, Inc. and MHC Maralago Cay, L.L.C. MHC Operating is also engaged in business at the Park. MHC Operating is a general partner of Equity LifeStyle Properties, Inc., since April 2004. MHC Operating is described in official court records in the Pasco County Clerk of Court as the "mobile home park owner" of the Park as defined by § 723.003(13), *Fla. Stat.,* which includes an "owner" or "operator." MHC Operating is also an operator of the Park.

9.   Defendant **Equity LifeStyle Properties, Inc., ("Equity LifeStyle")** is a foreign (Maryland) corporation with its principal place of business in Florida at 4300 W. Cypress St., Suite 400, Tampa, in Hillsborough County; and in Illinois at Two North Riverside Plaza, Suite 800, Chicago, Illinois. Equity LifeStyle, is the "mobile home park owner" of the Park as defined by § 723.003(13), *Fla. Stat.*, which includes an "owner" or "operator." Equity LifeStyle, is also an operator of the Park. Equity LifeStyle, is publicly traded on the New York Stock Exchange.

10.   Defendant **MHC Maralago Cay, L.L.C. ("MHC Maralago")**, is a foreign (Delaware) limited liability company since 2011 with a principal address of Two North Riverside Plaza, Suite 800, Chicago, IL 60606, which is also the Chicago corporate headquarters for Defendants Equity LifeStyle Properties, Inc., and MHC Operating Limited Partnership. MHC Maralago is also engaged in business at the Park. MHC Maralago is described in official court records in the Palm Beach County Clerk of Court as the "mobile home park owner" of the Park as defined by § 723.003(13), *Fla. Stat.,* which

includes an "owner" or "operator." MHC Maralago is also an operator of the Park.

11.    Defendant **Eric Zimmerman** is an individual citizen of Florida domiciled at 12629 New Brittany Blvd., #16, Fort Myers, in Lee County, Florida. Eric Zimmerman was a Southeast Division President of Hometown America from January 2003 through December 2011. He was a Regional Vice President of Defendant Equity LifeStyle, from January 2011 through July 2018. He is currently Vice President and Chief Operating Officer at Murex Properties, LLC. Eric Zimmerman was also engaged in business from 2011 through July 2018 as an operator of the Park as defined by § 723.003(16), *Fla. Stat.* He has held leadership positions of the Defendant FMHA Trade Association Defendant – the trade association for park owners.

12.    Defendant **Stanley Martin** is an individual citizen of Florida domiciled in Hillsborough County, Florida at an unknown physical location. Stanley Martin is employed at 4300 W. Cypress St., Suite 400, Tampa, in Hillsborough County, Florida. Stanley Martin is a Vice President and Corporate Counsel of Defendant Equity LifeStyle, from 2015 through present day. He is a licensed Florida lawyer since 1999. Stanley Martin is described in official court records in the Palm Beach County Clerk of Court as a lawyer for Defendants MHC Maralago, and Equity LifeStyle

13.    Defendant **Sydney Morris** is an individual citizen of Florida domiciled in Plant City, Hillsborough County, Florida at an unknown physical location. Sydney Morris is employed at 4300 W. Cypress St., Suite 400, Tampa, in Hillsborough County, Florida. Sydney Morris is a Senior Regional Manager of Defendant Equity LifeStyle, and has been employed as such since 2015. Sydney Morris is also engaged in business at the Park. Sydney Morris is also an "operator" of the Park as defined by § 723.003(16), *Fla. Stat.*

14.    Defendant **Rene Scott** is an individual who currently resides in Hillsborough County, Florida. Rene Scott is a Senior Regional Manager of Defendant Equity LifeStyle Properties, Inc. Rene Scott is also engaged in business from 2018 through

the present as an operator of the Park.

15.     Defendant **Beverly Sagehorn** is an individual who currently resides at 9863 Cross Pine Court, Lake Worth, Palm Beach County, Florida. Beverly Sagehorn was a General Manager and an employee of Defendant Equity LifeStyle Properties, Inc. Beverly Sagehorn was also engaged in business from 2011 through July 2018 as an operator of the Park.

16.     Defendant **Bertha Rodriguez** is an individual who currently resides at 5229 Ginger Way, #284, Lake Worth, Palm Beach County, Florida. Bertha Rodriguez is a General Manager and an employee of Defendant Equity LifeStyle Properties, Inc. Bertha Rodriguez is also engaged in business from 2011 through the present as an operator of the Park.

17.     Defendant **Milagros Rivera ("Millie Rivera")** is an individual who currently resides at 27 Baytree Circle, Boynton Beach, Palm Beach County, Florida. Millie Rivera is a Marketing and Sales Associate and an employee of Defendant Equity LifeStyle Properties, Inc. Millie Rivera is also engaged in business at least from 2015 through the present as an operator of the Park.

18.     Defendants MHC Operating, Equity LifeStyle, MHC Maralago, Eric Zimmerman, Stanley Martin, Sydney Morris, Rene Scott, Beverly Sagehorn, Bertha Rodriguez, and Millie Rivera are collectively referred to herein as the "MHC/Equity LifeStyle Defendants."

   **B.     The FMHA Trade Association Defendant**

19.     Defendant **Florida Manufactured Housing Association, Inc., ("FMHA Trade Association Defendant")** is a Florida corporation with its principal place of business at 1284 Timberlane Rd., Tallahassee, Florida. The FMHA Trade Association Defendant is the trade association for Florida mobile home park owners.

     **C.**     **The Lutz Bobo Law Firm Defendants**

     20.     Defendant **J. Allen Bobo ("Allen Bobo")** is an individual citizen of Florida domiciled in Sarasota County, Florida at an unknown physical address. Allen Bobo is a licensed Florida lawyer since 1982, a partner, principal, or shareholder of Defendant Lutz, Bobo & Telfair, P.A., 2 N. Tamiami Trail, Ste. 500, Sarasota County, Sarasota, Florida.

     21.     Defendant **Lutz, Bobo & Telfair, P.A. ("Lutz Bobo Law Firm")**, d/b/a Lutz, Bobo, Telfair, Eastman, Gabel & Lee, f/k/a Lutz, Webb & Bobo, P.A., is a Florida corporation which operates in Leon County, Florida at 2155 Delta Blvd., Suite 201B, Tallahassee, Florida and in Sarasota County, Florida at One Sarasota Tower, Two North Tamiami Trail, Fifth Floor, Sarasota, Florida.

     22.     Defendants Allen Bobo and the Lutz Bobo Law Firm are collectively referred to herein as the "Lutz Bobo Law Firm" Defendants.

**III.**     **JURISDICTION AND VENUE**

     23.     Count One of this Complaint is an action for treble damages for violation of §§ 542.18 and 542.19 of the Florida Antitrust Act of 1980, Chapter 542, *Fla. Stat.*, in accord with § 542.22, *Fla. Stat.*, and for injunctive or other equitable relief in accord with § 542.23, *Fla. Stat.* This Court has jurisdiction of this claim under § 542.30, *Fla. Stat.* This Court also has personal jurisdiction over each Defendant under § 48.193, *Fla. Stat.*, because, among other reasons, each Defendant operates, conducts, engages in, or carries on a business or business venture in the State of Florida or has an office in the State of Florida or has committed a tortious act or acts within the State of Florida.

     24.     Venue is proper under §§ 47.011, 47.021, and § 542.30, *Fla. Stat.*

     25.     Plaintiff seeks damages in excess of $30,000.00, injunctive or other equitable relief, attorneys' fees, and costs on behalf of the represented mobile homeowners.

## IV.   ACTS IN FURTHERANCE OF THE CONSPIRACY

### A.   Concealed Illegal Sale of the Park in Violation of Right of First Refusal

26.    In August 1986 the Maralago Cay HOA f/k/a Arrowhead Mobile Homeowners Association, Inc., recorded its "Notice of Right to Purchase the Park," (then known as "Arrowhead Village") under § 723.071, *Fla. Stat.*  (Exh. B is attached and adopted). On that date, Arrowhead Village was owned by Arrowhead Village, Inc., and Ellis Johnson, President of Arrowhead Village, Inc.

27.    In September 1997 Pres. Johnson, on behalf of Arrowhead Village, Inc., recorded an affidavit that Arrowhead Village, Inc., had "accepted" an offer by MHC Operating to purchase the Park. (Exh. C is attached and adopted).

28.    Pres. Johnson averred that Arrowhead Village, Inc., complied with § 723.071(2), *Fla. Stat.*, when he gave the HOA notice of the offer and disclosed the price and materials terms and conditions upon which the Corporation would consent to selling the Park. (Exh. C).

29.    But, Arrowhead Village, Inc.'s sale to MHC Operating (Exh. D is attached and adopted) was in direct violation of § 723.071(2), *Fla. Stat.*, which prohibits such an acceptance until after Arrowhead Village, Inc., disclosed the price, terms, and conditions of the offer and "consider any offer made by the home owners ...." § 723.071(2), *Fla. Stat.*

30.    The Defendant MHC Operating concealed the illegal nature of the sale or transfer of the Park to MHC Operating from the elderly mobile homeowners and the Maralago Cay HOA. The mobile homeowners and the Maralago Cay HOA only just learned of the illegal nature of that sale or transfer of the Park in September 2019.

31.    MHC Maralago was formed in Delaware on September 17, 2003.

32.    On October 17, 2003 MHC Operating sold or transferred its interest in the Park to MHC Maralago in further violation of § 723.071, *Fla. Stat.*, and the Maralago Cay

HOA's statutory right to meet the price, terms, and conditions of an offer made by MHC Maralago to MHC Operating Limited Partnership. (Exh. E is attached and adopted).

33.    MHC Maralago was not a partner of MHC Operating.

34.    MHC Operating's sale or transfer to MHC Maralago was not excused by § 723.071(4)(c), *Fla. Stat.*, since the transferor MHC Operating is a partnership; only a transfer by a corporation to an affiliate or a partnership is excused.

*****

§ 723.071(4)    This section [granting the HOA's right off first refusal] does **not apply** to:

***

(c)    Any transfer **by a corporation** to an affiliate. As used herein, the term "affiliate" means any shareholder of the transferring corporation; any corporation or entity owned or controlled, directly or indirectly, by the transferring corporation; or any other corporation or entity owned or controlled, directly or indirectly, by any shareholder of the transferring corporation.

(d)    Any transfer by a **partnership to any of its partners**.

§ 723.071(4), *Fla. Stat.* (Emphasis Added)

*****

35.    Nor was the sale or transfer excused by any other provision of § 723.071(4), *Fla. Stat.*

36.    The Defendants MHC Operating and MHC Maralago *again concealed* the illegal nature of the sale or transfer of the Park from MHC Operating to MHC Maralago from the elderly mobile homeowners and the Maralago Cay HOA. The mobile homeowners and the Maralago Cay HOA only just learned of the illegal nature of that sale or transfer of the Park in September 2019.

### B.    Extort Adoption of an Illegal Rental Agreement

37.    In 2016, the MHC/Equity LifeStyle Defendants, outside of either
statutory meetings or confidential mediation efforts, extorted the representative Maralago
Cay HOA to adopt an illegal standardized lot rental agreement ("LTA") authored
and drafted by the Lutz Bobo Law Firm Defendants. The FMHA Trade Association
Defendant encouraged distribution and discussion of the terms of the LTA among
its assembly of mobile home park owners. A copy of the form or standardized LTA is
attached as Exhibit F and adopted.

38.    The standardized LTA extorts and injures the homeowners represented
by the Plaintiff by requiring them to forfeit their statutory and constitutional protections
and remedies in direct contravention of the Florida Mobile Home Act including, but
not limited to: Section 4 of the standardized LTA required that if the Maralago Cay
HOA contended that MHC Maralago was in violation of the LTA, the prospectus, any
rental agreement, or the Florida Mobile Home Act, the Maralago Cay HOA must notify
MHC Maralago in writing of the facts "giving rise to and constituting such alleged
Non-Compliance" by certified mail within ninety days of the date the Maralago Cay
HOA received reasonable notice of such facts. The LTA then provided MHC Maralago
forty-five days from receipt of the notice to "cure" the alleged non-compliance. Upon
completion of any such cure, MHC Maralago was to be "deemed" not to have been in
default or in violation.

39.    Section 4 of the LTA further required that the ninety day notice and forty-
five day opportunity to cure provisions be deemed to be a condition precedent to any legal
action.

40.    Section 5 of the LTA prohibited an award of attorneys' fees or costs in any
proceeding "by or on behalf of any former or current Homeowner seeking to invalidate

or otherwise dispute the validity of the [LTA]." Further, section 5 of the LTA required, in direct contravention of the Florida Mobile Home Act's statutory declaration of a fiduciary relationship between the Maralago Cay HOA and the Plaintiff homeowners, the Maralago Cay HOA and MHC Maralago to "mutually enforce this Agreement and cooperate fully in the event the validity or integrity of this Agreement is attacked or disputed by any such Homeowner."

     41.     Section 6 of the LTA required that any controversy or claim related to the LTA shall first require non-binding mediation under Chapter 44, *Fla. Stat*.

     42.     Section 6 of the LTA also required, in direct contravention of the Florida Mobile Home Act, the Florida Constitution, and the U.S. Constitution, that in any court proceeding "arising out of or relating to" the LTA, the parties must waive their right to a jury trial.

     43.     Section 8 "Mutual Release" of the LTA expressly releases the Defendants (along with a broad litany of unknown and unidentified persons and entities) and:

> ... their parents, affiliates, subsidiaries, officers, directors, agents, stockholders, members, attorneys, successors and assigns from any and all claims, actions or causes of action of any kind whatsoever ("Claims"), whether legal, equitable, administrative, or otherwise, which the Association now has or ever had including, but not limited to, Claims involving or relating to rents, services, maintenance, or Owner's compliance with or delivery of the Community's prospectuses, rental agreements, as well as any other alleged violation of Chapter 723, Florida Statutes. With the exception of Claims involving the subject matter of this Agreement, this release shall address only Claims existing on the Effective Date. This release shall not apply to any Homeowner's failure to pay rent or a rules violation.

     44.     Section 9 of the LTA elevated the LTA as controlling in the event of a conflict between the LTA and the statutory prospectus or rental agreement.

     45.     Section 10 of the LTA declared that the LTA superseded all prior and contemporaneous discussions, negotiations, conditions or understandings relating to the

LTA.

46.     The MHC/Equity LifeStyle Defendants' close relationships with the
FMHA Trade Association Defendant, and the Lutz Bobo Law Firm Defendants enable
them to collaborate with other mobile home park owners and ultimately with each other
to develop and expand state-wide adoption of the LTA by other mobile home park owners.
In 2016 Attorney Allen Bobo, partner in the Lutz Bobo Law Firm, described that he
worked closely with Eric Zimmerman, then Senior Vice President of Equity LifeStyle, on
revisions and implementation of LTAs identical to the LTA in the instant cause. In one
instance, recited Allen Bobo, a homeowner (in another Equity LifeStyle, Park) pointed
to an ambiguity in the LTA favorable to their homeowner association. In response, Eric
Zimmerman then quipped to Allen Bobo: "How did you miss that one, Allen?"

47.     The Maralago Cay HOA was aware of the MHC/Equity LifeStyle
Defendants' intense interest in the representative Maralago Cay HOA's adoption of
the standardized LTA through the earlier executed 2008 LTA and references to the
standardized LTA in meeting notes of the Equity LifeStyle supported "Networking
for Progress Group," and exchanges between the Maralago Cay HOA and the MHC/
Equity LifeStyle Defendants.  In the March 28, 2013 meeting notes of the Networking for
Progress Group, the notes taken of the meeting between representatives of various Florida
Equity LifeStyle mobile home parks and Eric Zimmerman referenced and elaborated upon
the LTA:

                                        ****

> ELS standardized the Long Term Agreement 3-4 years ago but has made some minor tweaks to it as needed. The only thing that will change from community to community will be the amount of the increase and the term. There will be no wish lists included in future LTAs, strictly rent. Wish lists (to be included in the Capx budget), are to be discussed with the manager and regional manager at the quarterly meetings (which must be requested).

****

(Exh. G is attached and adopted)

48.     In the September 12, 2013 meeting notes of the Select Committee of the Equity LifeStyle, supported Networking for Progress Group, the notes taken of the meeting between representatives of various Florida Equity LifeStyle mobile home parks and Eric Zimmerman discussed the LTA:

****

> Long Term Agreements: were discussed, first with the ELS definition being a rental agreement that may change the terms of the prospectus. This was not an in depth discussion of rental agreements but was brought up because several communities are reporting that ELS has refused to meet and discuss long term agreements. We were reminded by Eric [Zimmerman] that they are actually required to meet just once and that should be within the thirty days (as requested) after receiving the 90 day notice per FS, Chapter 723.037. Eric [Zimmerman] pointed out that the negotiating committee has the full authority to sign the long term agreement.

****

(See Exh. G)

49.     In the November 21, 2013 meeting notes of the Select Committee of the Equity LifeStyle, supported Networking for Progress Group, the notes taken of the meeting between representatives of various Florida Equity LifeStyle mobile home parks and Eric Zimmerman discussed the LTA:

****

Future LTAs will be reviewed by in house counsel. It was pointed out that the language in the LTA, particularly that referring to the waiver, is one of the reasons that communities are not signing the agreement. Eric [Zimmerman] pointed out that that paragraph refers only to situations that have occurred to that point (NOT FUTURE SITUATIONS). If there are issues serious enough that you are considering legal action against ELS they should be discussed (prior to signing the agreement) in an effort to work them out. The purpose of the waiver is after working out a favorable agreement in good faith, they (ELS) don't want to be faced with a lawsuit.

Remember, if you previously signed the long term agreement (LTA) (containing the clauses referenced above), when the LTA expires, so do the terms of those clauses, UNLESS the LTA contained language stating otherwise. Communities with CPI (only) based increases typically don't have long term agreements. Eric [Zimmerman] explained that the release for ELS in the LTA speaks to the many reasons somebody may choose to sue them. The reason the HOA isn't offered the same release is because there don't appear to be any reasons why ELS would want to sue them.

Long Term Agreements may vary, but are typically three years. Rounding of rent increases are determined by the prospectus for the community, some allow rounding up to one (1) dollar, some allow up to five (5) dollars.

There are no penalties for not signing the long term agreement.

Market, CPI, home sales and a variety of economic factors are taken into consideration to determine rates of increase, not the expected return to stockholders, as suggested.

                                        ****

(See Exh. G)

    50.    In the February 19, 2015 meeting notes of the Select Committee of the

Equity LifeStyle, supported Networking for Progress Group, the notes taken of the

meeting between representatives of various Florida Equity LifeStyle mobile home parks

and Eric Zimmerman discussed the LTA:

                                        ****

... Relocating resident policy: ELS's policy regarding relocating residents is the same as addressed in the LTA under Homeowners Affected by this Agreement; Transferees. lf ..... any included Homeowner transfers or sells any legal or equitable interest in such Homeowner's mobile home to any transferee or resale purchaser (collectively, a "Transferee"), the Transferee shall be permitted to assume such included Homeowners rental agreement but only for the remainder of the annual lease term then in effect between the included Homeowner and Owner. Upon the expiration of such annual lease term the Transferee's rent shall be adjusted to the Community's then prevailing market rate ..... " Which is basically the same as FS Chapter 723.059 (3) The purchaser of a mobile home who becomes a resident of the mobile home park in accordance with this section has the right to assume the remainder of the term of any rental agreement then in effect between the mobile home park owner and the seller ........... .

It should be noted that residents relocating within the community that are purchasers of ELS inventory homes won't have a lease to assume and will start their new lease at market rent but are eligible for any rent concession programs being offered to new residents at that time.

****

(Exh. H is attached and adopted)

51.    In 2016, Florida Attorney Shawn Arbeiter disclosed that Attorney Allen Bobo (then a partner and shareholder of the Lutz Bobo Law Firm) had made numerous and regular annual presentations to the FMHA Trade Association Defendant's annual meeting of Florida mobile home park owners informing the FMHA Trade Association Defendant's assembly of litigation tactics of mobile home plaintiffs' attorneys. According to Arbeiter, those lengthy presentations by Bobo included opinionated and disparaging remarks by Bobo and assembly members of the undersigned Plaintiff's Counsel Perry's trial strategy including, but not limited to: application of the Florida Deceptive and Unfair Trade Practices Act to lot rental, common area maintenance, and LTA issues in state court litigation. Attorney Bobo also disclosed that in an earlier and separate presentation to the FMHA Trade Association Defendant assembly, he described existing statewide mobile

18

home lot rental amounts as "not high enough," explaining that if lot rent increases were appropriately higher, that retiree mobile homeowners would be filing lawsuits all over the state.

### C.    Divert resales to the benefit of the Defendants

52.    Defendants Eric Zimmerman, Stanley Martin, Sydney Morris, Rene Scott, MHC Maralago, Equity LifeStyle, and MHC Operating routinely encouraged or encourage Defendants Beverly Sagehorn, Bertha Rodriguez, and Millie Riviera to repeatedly divert Plaintiffs seeking approval to purchase a resale mobile home in the Park from an individual homeowner or through an outside third party realtor to instead purchase a different resale home through the Defendants. The consequence of Defendants' deceit and manipulation is reduced and impaired resales of homes through outside realtors.

### D.    Concealed Contaminated Water Supply From Home Purchasers

53.    The elderly mobile homeowners throughout the Park regularly report and complain to the MHC/Equity LifeStyle Defendants that their drinking water has an odd, dirty, chalky brownish-yellow appearance, and repulsive odor and taste. The MHC/Equity LifeStyle Defendants refuse to address their complaints or correct the problem.

54.    In the Park's 2018 Drinking Water Quality Report, U.S. Water Services Corporation reported that the Park's potable water tested in February, April, June, July, and November and concluded that: "In 2018, our water system exceeded the MCL [Maximum Contaminant Level] for color. Secondary contaminants are considered to be aesthetic violations, and they are not considered to have major health effects. The Dept. of Environmental Protection and the utility continues to monitor the situation ." The Report further noted that the *secondary contaminants constituted a violation and exceeded the highest range of results: **twice that permitted by law**. The likely source of the contamination was*

*described as "[n]aturally occurring organics."* (Exh. I is attached and adopted) (Emphasis Added)

55.     Since 2016 the MHC/Equity LifeStyle Defendants concealed from the elderly Plaintiff mobile homeowner purchasers that the water system was compromised by a high level of contaminants.

56.     The elderly mobile homeowners have serious medical conditions including, but not limited to, impaired immune systems, risks of allergic and respiratory illnesses, and infection risk.

57.     As a consequence, nearly every elderly mobile homeowner has had to spend considerable sums of monies to provide alternate drinking, cooking water or purchase expensive filtration systems.

### E.     Fraudulent and Unreasonable Lot Rental Categories & Amount

58.     Since 2016 the MHC/Equity LifeStyle Defendants imposed a four per cent to a five per cent annual lot rental increase. The MHC/Equity LifeStyle Defendants refused to discuss with the representative Homeowners' Committee of the Maralago Cay HOA the basis or justification for the four to five per cent lot rental increase. The MHC/ Equity LifeStyle Defendants flatly rejected the Maralago Cay HOA's Homeowners' Committee's submission of other park comparables and other matters in mitigation of a four to five per cent lot rental increase in violation of Florida law.

### F.     Unreasonable Elimination or Reduction of Services

59.     The MHC/Equity LifeStyle Defendants unreasonably eliminated or reduced services without an advance 90 day written notice or a corresponding reduction in lot rent in violation of Florida law, including, but not limited to:

A.   The MHC/Equity LifeStyle Defendants are unresponsive and have reduced maintenance;

    1.   Full-time maintenance staff reduced;

    2.   The MHC/Equity LifeStyle Defendants do not respond to the majority of phone calls, emails, and other correspondence;

    3.   The MHC/Equity LifeStyle Defendants arbitrarily enforce rules and regulations. In one instance, illegally prohibit homeowners from receiving business mail at their home address.  The MHC/Equity LifeStyle Defendants are unavailable after normal business hours to enforce the rules and regulations.

B.   Security

    1.   The Park security gates are inoperative for weeks, months, and even years at a time. Even when operative, the MHC/Equity LifeStyle Defendants restrict access to only one mobile telephone access number per home.

C.   Clubhouse

    1.   The MHC/Equity LifeStyle Defendants have no security or supervision of members of the general public who use the clubhouse facilities;

    2.   The Clubhouse was shut down in March 2020 as a result of the existing COVID-19 pandemic and reopened in August 2020 without proper sanitization or enforcement of a mask requirement, exposing the homeowners to a virulent infectious disease and an enhanced morbidity due

21

to their largely immuno-suppressed pre-existing medical conditions and advanced age. Neither the closure nor the improper re-opening was accompanied by an advance 90 day written notice to the Plaintiff or a reduction in lot rent corresponding to the reduced service. The MHC/Equity LifeStyle Defendants unreasonably deny the Plaintiff's requests to have HOA functions, activities, or events in the Park common areas on weekends or evenings.

    3.    The MHC/Equity LifeStyle Defendants illegally and unreasonably restrict or condition the Maralago Cay HOA's use of the clubhouse upon the provision of general liability insurance.

D.    Common Areas - Streets

    1.    The streets throughout the Park and clubhouse parking lots are in disrepair, crumbling and dangerous to pedestrians and bicycle traffic;

    2.    Streets throughout the Park are unsightly. Grass grows in some of the cracks in the pavement;

E.    "55 and Older" Park

    1.    The MHC/Equity LifeStyle Defendants have failed to supervise or restrict under age occupants or children in the shared facilities in the Park as required by the properly promulgated Park rules and regulations.

F.    Electrical Systems

    1.    The electrical utility connections, electrical poles, and

systems for which the MHC/Equity LifeStyle Defendants
were or are responsible is in an aged, poorly maintained,
and severely deteriorated condition throughout the Park. In
some instances, the electrical poles are held together with
zip ties.

G.   Water Outages

1.   The elderly mobile homeowners regularly experience near-
complete cessation of the water pressure without advance
notice by the MHC/Equity LifeStyle Defendants.

**G.   Unreasonable Restriction of Sub-lessee Terms to Six Months**

60.   The MHC/Equity LifeStyle Defendants sub-lease the homes they own for
a maximum of one year, But, the  MHC/Equity LifeStyle Defendants unreasonably and
arbitrarily restrict the sub-lessee rental terms for the mobile homeowners represented by
the Plaintiff Maralago Cay HOA to a maximum of six months.

**V.   COUNT I:   FLORIDA ANTITRUST ACT**

**(Against All Defendants)**

**§§ 542.18 and 542.19, *Fla. Stat.***

61.   Plaintiff realleges and restates paragraphs 1 through 60 as if fully set forth
herein and further state:

62.   This is an action against the MHC/Equity LifeStyle Defendants, FMHA
Trade Association Defendant, and the Lutz Bobo Law Firm Defendants for their violation
of the Florida Antitrust Act of 1980, §§ 542.18 and 542.19, *Fla. Stat.*

63.   Since at least October 2016, the MHC/Equity LifeStyle Defendants (or
one or more of its subsidiaries) leased mobile home lots to the homeowners represented
by the Plaintiff, in a continuous and uninterrupted flow of interstate trade or commerce,

23

including through and into this judicial district within the meaning of the Florida
Antitrust Act.

64.     The  MHC/Equity LifeStyle Defendants, FMHA Trade Association
Defendant, and the Lutz Bobo Law Firm Defendants knowingly—that is, voluntarily and
intentionally—extorted under Florida law and attempted to entered into a continuing
agreement, understanding, and conspiracy to raise, fix, maintain, and/or to impose a
mobile home lot rental by subjecting the mobile homeowners, their representative mobile
homeowner associations ("HOAs"), and the Park lot rental agreements to, among other
things, impose an illegal Long Term Agreement ("LTA"), thereby reducing or eliminating
price competition.

65.     To be clear, Plaintiff is not alleging that the Hometown Park Sale
Defendants and the MHC/Equity LifeStyle Defendants, working with FMHA Trade
Association Defendant, and the Lutz Bobo Law Firm Defendants, conspired to fix the
prices of mobile home lot rental amount at the same level. Instead, the Hometown Park
Sale Defendants and the MHC/Equity LifeStyle Defendants, working with FMHA
Trade Association Defendant, and the Lutz Bobo Law Firm Defendants, conspired to
eliminate discounting of lot rental amount by ensuring that all park owners charged the
same minimum price and used the same terms.[2] The MHC/Equity LifeStyle Defendants,
FMHA Trade Association Defendant, and the Lutz Bobo Law Firm all share an interest in
not reducing the lot rental amount.

66.     The scheme was anything but "unilateral." The conduct at issue here
can be characterized as consciously parallel business conduct similar to how the United
States Supreme Court characterized the conduct at issue in *United States v. General Motors
Corp.*: "once the agreements were secured, General Motors both solicited and employed

---

2       As the United States Supreme Court stated in *Catalano, Inc. v. Target Sales*, 446 U.S. 643, 648
(1980), an "agreement to eliminate discounts" "falls squarely within the traditional *per se* rule against price
fixing." (Emphasis added)

the assistance of its alleged co-conspirators in helping to police them. What resulted was a fabric interwoven by many strands of joint action to eliminate the discounters from participation in the market, to inhibit the free choice of dealers to select their own methods of trade and to provide multilateral surveillance and enforcement. This process for achieving and enforcing the desired objective can by no stretch of the imagination be described as 'unilateral' or merely 'parallel.'" 384 U.S. 127, 148 (1966)

67. The FMHA Trade Association Defendant, as the Florida mobile home park owners' trade association represented by the Lutz Bobo Law Firm Defendants, worked with the MHC/Equity LifeStyle Defendants and the Lutz Bobo Law Firm Defendants to develop and implement LTAs and other matters alleged herein, *supra*, across Florida mobile home parks. That is, FMHA Trade Association Defendant, was in a position to communicate to Florida mobile home park owners before it implemented the scheme including, but not limited to, the LTA that its competitors also intended to do so and the suggested format of the LTA.

68. The MHC/Equity LifeStyle Defendants and the Lutz Bobo Law Firm Defendants' close relationships with FMHA Trade Association Defendant, enabled them to collaborate with other mobile home park owners and ultimately with each other to develop these conspiratorial plans, including the LTA. Since 2015 Allen Bobo, and the Lutz Bobo Law Firm worked closely with Eric Zimmerman, then Senior Vice President of Equity LifeStyle, on revisions and implementation of LTAs, for example.

69. Each of the MHC/Equity LifeStyle Defendants, FMHA Trade Association Defendant, and the Lutz Bobo Law Firm Defendants had a motive to maintain high retail prices for mobile home lot rental amounts. In addition, in order to encourage independent mobile home park owners to adopt and implement LTAs, the MHC/Equity LifeStyle Defendants, FMHA Trade Association Defendant, and the Lutz Bobo Law Firm Defendants needed to keep the resale mobile home lot rental amounts high.

25

70. The MHC/Equity LifeStyle Defendants, FMHA Trade Association Defendant, and the Lutz Bobo Law Firm Defendants have also demonstrated a past propensity to conspire against other mobile home park owners discounting mobile home lot rental amounts.

71. The MHC/Equity LifeStyle Defendants, FMHA Trade Association Defendant, and the Lutz Bobo Law Firm Defendants' agreement to implement LTAs has harmed and continues to harm competition by increasing prices for the mobile home lot rental amounts made subject to them. Consumers ultimately pay the economic cost of this wrongful conduct in the form of higher prices for mobile home lot rental amounts affected by LTAs. The effect of the LTAs has been to limit consumer choice by depriving them of the ability to shop around for discounts on mobile home lot rental amounts.

72. The  MHC/Equity LifeStyle Defendants, FMHA Trade Association Defendant, and the Lutz Bobo Law Firm Defendants (and their co-conspirators) furthered and effectuated their conspiracy in the following ways, among others:

      A.      Participating in secret communications, discussions, and meetings in the U.S. to exchange confidential and competitively sensitive information regarding each other's lot rental amounts charged in their Florida mobile home business;

      B.      From time to time, discussing and agreeing during those conversations and meetings to set a price floor to be quoted to a mobile homeowner;

      C.      Perpetuating the Florida mobile home industry-wide intentional frustration of the Plaintiff's and other representative homeowners' associations' statutory right of first refusal to purchase their Park;

      D.      Perpetuating the distribution of an illegal LTA which supports their fixed rent increases and violates Chapter 723, *Fla. Stat.*, and the

homeowners' right to a civil jury trial in violation of the Florida and
United States Constitution;

E.     Divert resales to the benefit of the MHC/Equity LifeStyle
Defendants;

F.     Concealed contaminated brownish-yellow water supply from the
home purchasers;

G.     Imposed fraudulent and unreasonable lot rental categories and
amount; and

H.     Unreasonably eliminated or reduced services.

73.     As a direct and proximate result of the  MHC/Equity LifeStyle
Defendants, FMHA Trade Association Defendant, and the Lutz Bobo Law Firm
Defendants' conduct, the homeowners represented by the Plaintiff have been harmed
and will continue to be harmed by paying supra-competitive lot rental amounts charged in
Florida mobile home parks that they would not have paid in the absence of the conspiracy.

74.     The  MHC/Equity LifeStyle Defendants, FMHA Trade Association
Defendant, and the Lutz Bobo Law Firm Defendants' combination, conspiracy, acts, and
practices, or the effects thereof, are continuing and will continue and are likely to recur
unless permanently restrained and enjoined.

**RELIEF REQUESTED**

Wherefore, Plaintiff respectfully requests the following relief:

1.     A jury verdict for compensatory damages;

2.     A judgment against all defendants, jointly and severally, by the Court
for treble the amount of the jury verdict and for attorney's fees, costs and interest as
allowable by law for violations of the Florida Antitrust Act;

3.     An order that each defendant be permanently enjoined from future
violations of §§ 542.18 and 542.19, *Fla. Stat.*

.

    4.      An order that the plaintiff be awarded its costs of this suit and reasonable attorney's fees pursuant to § 542.22(1), *Fla. Stat.*;

    5.      A judgment and decree that the defendants have engaged in an unlawful combination or a conspiracy restricting trade and commerce in violation of §§ 542.18 and 542.19, *Fla. Stat.*

    6.      Award the Plaintiff such other and further equitable and legal relief as the Court deems just and necessary.

## VI.    JURY TRIAL DEMANDED

    Plaintiff hereby demands a trial by jury on all issues triable by jury.

February 25, 2020.

> /s/ Daniel W. Perry
> Florida Bar No. 376671
> dan@danielperry.com
> 4767 New Broad St #1007
> Orlando, FL 32814-6405
> Main: (407) 894-9003
> Counsel for Plaintiff Maralago Cay HOA

### CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that on February 25, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

> s/ Daniel W. Perry
> Attorney