**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO: 21-80049-CV-MIDDLEBROOKS

MARALAGO CAY HOMEOWNERS ASSOCIATION, INC.,

    Plaintiff,

v.

MHC OPERATING LIMITED PARTNERSHIP, et al.,

    Defendants.

_____/

<u>**ORDER ON MOTION TO DISMISS**</u>

THIS CAUSE comes before the Court upon Defendants'[1] Motion to Dismiss Amended Complaint, filed on March 11, 2021. (DE 23). The Motion is fully briefed. (DE 29; DE 31). For the following reasons, the Motion is denied.

## I.    BACKGROUND

On October 12, 2020, Plaintiff, a mobile homeowners association, filed this action in state court (DE 1-1); it was removed to this Court on January 11, 2021 (DE 1). Plaintiff brings this action "in its representative capacity on behalf of itself, and more than 1,000 current and former mobile homeowners in the Maralago Cay Mobile Home Park." (DE 15 at 3). Defendants include three business entities that own and operate the mobile home park, seven current and former agents of those entities, and one attorney and one law firm ("Law Firm Defendants"). (*Id.* at ¶¶ 8–17, 20–21). The Amended Complaint contains one claim for violations of the Florida Antitrust Act. (*Id.* at ¶¶ 61–74). It alleges that Defendants "conspired to eliminate discounting of lot rental amount[s] by ensuring that all park owners charged the same minimum price and used the same terms" by,

---

[1] Plaintiff filed this action against an additional Defendant which had filed a separate Motion to Dismiss (DE 24). That Defendant has since been voluntarily dismissed from this action. (DE 41).

among other actions, including a long-term agreement ("LTA") in park lot rental agreements. (*Id.* at ¶¶ 64–65). The Amended Complaint further maintains that "[t]his conspiracy, combination, or concert of action resulted in higher mobile home lot rental prices . . . than would have existed in a competitive market." (*Id.* at ¶ 2). Defendants raise several grounds for dismissal. (*See* DE 23).

## II.    LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the allegations in a complaint. *See* Fed. R. Civ. P. 12(b)(6). In assessing legal sufficiency, courts are bound to apply the pleading standard articulated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). That is, "a complaint must . . . contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Twombly*, 550 U.S. at 570).

When reviewing a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and accept as true all of the plaintiff's factual allegations. *See Christopher v. Harbury*, 536 U.S. 403, 406 (2002); *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007). However, pleadings that "are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. "[A] formulaic recitation of the elements of a cause of action will not do[.]" *Twombly*, 550 U.S. at 555 (citation omitted). "Factual allegations must be enough to raise [the plaintiff's] right to relief above the speculative level[.]" *Id.* (citation omitted).

## III.    DISCUSSION

I will address in turn each ground for dismissal asserted by Defendants. Before doing so, I note that I strongly considered granting the Motion based upon the deficiencies in Plaintiff's Response, which in effect operate to waive several arguments. However, "parties cannot waive the

application of the correct law," *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 923 (11th Cir. 2018), and the arguments raised by Defendants do not warrant dismissal of the Amended Complaint under the facts as alleged by Plaintiff and the applicable law. As such, I will deny Defendants' Motion to Dismiss notwithstanding Plaintiff's failure to provide meaningful substantive briefing on many of the legal issues raised in the Motion.

### 1.   Res Judicata/Claim-Splitting Doctrine

Defendants first argue that the sole claim in this action is barred by res judicata and/or the claim-splitting doctrine because "[t]his is the second of two putative class actions filed by . . . [Plaintiff] within 11 months involving the same parties and same issues." (DE 23 at 1, 10–12).

Res judicata "is an affirmative defense that should be raised under Rule 8(c)[,] . . . [but] a party may raise a res judicata defense by motion rather than by answer where the defense's existence can be judged on the face of the complaint." *Concordia v. Bendekovic*, 693 F.2d 1073, 1075 (11th Cir. 1982) (citations omitted). There is no mention of any prior lawsuit in the Amended Complaint. And while Defendants attach the complaint from the prior lawsuit to their Motion, that exhibit alone fails to invoke the res judicata doctrine since it "does not indicate that the issue was actually litigated or that there has been a final judgment in the [prior] proceeding." *See id.* at 1076.

"Additional evidence, preferably a copy of the . . . court's records [from the prior lawsuit], is required in order to apply the doctrine of res judicata in the context of either a Rule 12(b)(6) motion to dismiss or a Rule 56 motion for summary judgment." *Id.* Defendants did not attach such records. "As a general rule, a court in one case will not take judicial notice of its own records in another and distinct case even between the same parties, unless the prior proceedings are introduced into evidence." *Id.* (citations omitted). Thus, I reject Defendants' res judicata argument.

However, should Defendants deem it appropriate to renew that argument on summary judgment, there appears to be a strong argument for applying the doctrine as to the Law Firm Defendants.

Nor does the record support application of the claim-splitting doctrine. "The claim-splitting doctrine: (1) 'requires a plaintiff to assert all of its causes of action arising from a common set of facts in one lawsuit,' and (2) applies where a second suit has been filed before the first suit has reached a final judgment." *Kennedy v. Floridian Hotel, Inc.*, 998 F.3d 1221, 1236 (11th Cir. 2021) (citation omitted). Here, Defendants do not establish that the present lawsuit was filed before the prior lawsuit reached a final judgment. Therefore, Defendants' claim-splitting argument fails.

### 2.  Antitrust Exemptions

Under the Florida Antitrust Act, "[a]ny activity or conduct exempt under Florida statutory or common law or exempt from the provisions of the antitrust laws of the United States is exempt from the provisions of this chapter." Fla. Stat. § 542.20. On that basis, Defendants assert that the alleged misconduct is exempt from the Florida Antitrust Act. (DE 23 at 12–16). They first argue that "[t]he alleged anticompetitive conduct here (sharing pricing information) is exempt under the Florida Mobile Home Act . . . because it is regulated by and pursuant to the Act." (*Id.* at 12–13). "[A]ll regulation and control of mobile home lot rents in mobile home parks and all those other matters and things relating to the landlord-tenant relationship treated by or falling within the [Florida Mobile Home Act's] purview" are "preempted to the state." *See* Fla. Stat. § 723.004(2).

For Defendants to succeed on this issue, I must accept their assertions that (1) the Florida Mobile Home Act's "mandate[ ] that rents . . . be 'reasonable' . . . operates as a cap" and "a price-fixing mechanism" that is "designed to reign in free-market forces, which is antithetical to the purpose of antitrust law," and (2) it is "antithetical to antitrust law" that the Florida Mobile Home

"Act establishes a comprehensive and mandatory negotiation process that specifically *requires*[2] park owners to accumulate, compare and provide to an HOA's 'homeowners' committee' data on the rents charged at other, comparable parks." (*See* DE 23 at 3–5 (emphasis in original)).

However, I am not persuaded that what the Act does—namely, require reasonable rental amounts and require some level of disclosure and consideration of rental amounts of comparable mobile home parks—equates to price fixing. Although those aspects of the Florida Mobile Home Act are intended to ensure that the rental amounts charged are reasonable, it is untenable to argue that they necessarily result in or encourage price fixing. For example, Defendants point to no provision in the Florida Mobile Home Act that prohibits the lowering or discounting of rental amounts. Simply ensuring that the rental amounts are not unreasonably high cannot be construed as either regulation or authorization of price fixing. Nor am I convinced that applying the Florida Antitrust Act to Defendants' alleged price fixing would frustrate any provision of the Florida Mobile Home Act or conflict with any action taken under the Florida Mobile Home Act. Therefore, I reject Defendants' argument in this regard.

Turning to federal law, Defendants contend that the alleged misconduct is exempt under (1) the state-action immunity doctrine and (2) the implied preclusion doctrine. (*Id.* at 13–16). With respect to the latter, "[i]mplied antitrust immunity is not favored, and can be justified only by a convincing showing of clear repugnancy between the antitrust laws and the regulatory system." *Nat'l Gerimedical Hosp. & Gerontology Ctr. v. Blue Cross of Kansas City*, 452 U.S. 378, 388 (1981) (citations omitted). Likewise, "given the fundamental national values of free enterprise and economic competition that are embodied in the federal antitrust laws, 'state-action immunity is

---

[2] I note that this appears to be required only "[i]f an increase [in lot rental amount] is based upon the lot rental amount charged by comparable mobile home parks." Fla. Stat. § 723.037(4)(b)1.

disfavored, much as are repeals by implication.'" *F.T.C. v. Phoebe Putney Health Sys., Inc.*, 568 U.S. 216, 225 (2013) (citation omitted). "When determining whether the anticompetitive acts of private parties are entitled to immunity, we employ a two-part test, requiring first that 'the challenged restraint . . . be one clearly articulated and affirmatively expressed as state policy,' and second that 'the policy . . . be actively supervised by the State.'" *Id.* (citation omitted). "[W]here possible, 'the proper approach . . . is an analysis which reconciles the operation of both statutory schemes with one another, rather than holding one completely ousted.'" *Nat'l Gerimedical Hosp. & Gerontology Ctr.*, 452 U.S. at 392 (citation omitted).

Defendants' arguments with regard to these doctrines likewise hinge on their assertion that the Florida Mobile Home Act effectively operates as a price-fixing mechanism because it requires reasonable rental amounts and requires some level of disclosure and consideration of rental amounts of comparable mobile home parks. Because I have rejected that assertion, I am not persuaded that Defendants have overcome the presumption against these antitrust exemptions. As a result, Defendants' Motion to Dismiss on grounds of antitrust exemptions is denied.

### 3. Unilateral Conduct

Defendants next claim that the alleged misconduct is unilateral and thus not actionable under the Florida Antitrust Act and, further, that the involvement of the Law Firm Defendants "cannot create the necessary combination to implicate antitrust law." (DE 23 at 16–17). Under the Florida Antitrust Act, "[e]very contract, combination, or conspiracy in restraint of trade or commerce in this state is unlawful." Fla. Stat. § 542.18. Similarly, section 1 of the Sherman Act provides that "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal." 15 U.S.C. § 1. "A section 1 plaintiff must prove an agreement between two or more

persons to restrain trade, because unilateral conduct is not illegal under section 1." *Levine v. Cent. Fla. Med. Affiliates, Inc.*, 72 F.3d 1538, 1545 (11th Cir. 1996) (citations omitted).[3]

"Ordinarily, a corporation cannot conspire with its own directors, officers or employees." *Hackett v. Metro. Gen. Hosp.*, 422 So. 2d 986, 988 n.2 (Fla. 2d DCA 1982). Here, however, there are three business entity Defendants, and the Amended Complaint does not describe the precise relationship between all of them. Without such information, I decline to find that the entities "have a complete unity of interest" and therefore that their "coordinated activity . . . must be viewed as that of a single enterprise." *See Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 771 (1984).

Further, with respect to the Law Firm Defendants, Defendants cite to *Am. Credit Card Tel. Co. v. Nat'l Pay Tel. Corp.*, 504 So. 2d 486, 488 (Fla. 1st DCA 1987), for the proposition that outside counsel falls within the general rule that a corporation cannot conspire with its agents. (DE 23 at 17). "However, an exception to this rule exists where, as here, the coconspiring corporate agents are alleged to have an independent personal stake in achieving the object of the conspiracy." *Hackett*, 422 So. 2d at 988 n.2 (citations omitted). Here, Plaintiff alleges that one of the Law Firm Defendants, Defendant J. Allen Bobo, had "described existing statewide mobile home lot rental amounts as 'not high enough,' explaining that if lot rent increases were appropriately higher, . . . retiree mobile homeowners would be filing lawsuits all over the state." (DE 15 at ¶ 51). While it is presumably in the interest of the other Defendants to avoid lawsuits, Defendant J. Allen Bobo's statement indicates that he would benefit from an increase in the filing of lawsuits by mobile homeowners. I find this allegation sufficient at the motion-to-dismiss stage to plausibly allege that

---

[3] The Florida Antitrust Act's construction provision provides: "It is the intent of the Legislature that, in construing this chapter, due consideration and great weight be given to the interpretations of the federal courts relating to comparable federal antitrust statutes." Fla. Stat. § 542.32.

the Law Firm Defendants had an independent personal stake in increasing rental amounts through LTAs. Therefore, I reject Defendants' argument that Plaintiff only alleged unilateral conduct.

### 4.  Statute of Limitations

Defendants also contend that Plaintiff's claim is time-barred because "[t]he LTA has been in use at Maralago since 2008." (DE 23 at 17–18). Claims brought under the Florida Antitrust Act are subject to a four-year statute of limitations. *See* Fla. Stat. § 542.26(1). Defendants fail to recognize that "[s]uit may be brought more than four years after the events that initially created the cause of action . . . if the action is commenced within four years after the defendant commits (1) an overt act in furtherance of the antitrust conspiracy or (2) an act that by its very nature constitutes a 'continuing antitrust violation.'" *Morton's Mkt., Inc. v. Gustafson's Dairy, Inc.*, 198 F.3d 823, 827–28 (11th Cir. 1999) (citation omitted). "An act constitutes a 'continuing violation,' if it injures the plaintiff over a period of time. Even though the illegal act occurs at a specific point in time, if it inflicts 'continuing and accumulating harm' on a plaintiff, an antitrust violation occurs each time the plaintiff is injured by the act." *Id.* at 828 (citation omitted). As such, "[w]hen an alleged antitrust conspiracy results in ongoing sales or the collection of payments over time, . . . each sale or payment constitutes a new 'act' that starts the running of the statute of limitations." *Bray v. Bank of Am. Corp.*, 784 F. App'x 738, 741 (11th Cir. 2019) (citations omitted).

Here, Plaintiff alleges that the LTAs "harm competition by increasing prices for the mobile home lot rental amounts made subject to them" and that the individuals represented by Plaintiff "will continue to be harmed by paying supra-competitive lot rental amounts charged in Florida mobile home parks that they would not have paid in the absence of the conspiracy." (DE 15 at ¶¶ 71, 73). Therefore, each time that such a rental amount is collected pursuant to the LTAs, another antitrust violation occurs, thereby starting the running of the four-year limitations period again.

Although some of the alleged misconduct that Plaintiff asserts supports its Florida Antitrust Act claim may fall outside of the limitations period, it is not apparent from the face of the Amended Complaint that no such rental amounts were collected within the four-year period preceding the filing of this action. Therefore, the Motion is also denied on the statute of limitations argument.

### 5.   Anticompetitive Conduct

Finally, Defendants maintain that "[m]uch of the alleged conduct is not anticompetitive activity within the ambit of the Florida Antitrust Act." (DE 23 at 18). Even so, that does not require dismissal of the Amended Complaint, which clearly alleges that Defendants have engaged in anticompetitive behavior, such as imposing LTAs to "reduc[e] or eliminat[e] price competition" (*see, e.g.*, DE 15 at ¶ 64). I find such allegations sufficient to plausibly allege anticompetitive activity, and thus I do not view this argument as a basis for dismissing the Amended Complaint.[4]

### 6.   Other Grounds

I decline to consider the arguments raised in the recently dismissed Defendant's separate Motion to Dismiss, as Defendants request (*see* DE 23 at 1 n.1). Specifically, Defendants state that "[i]n the interests of brevity and marshalling the Court's resources, the grounds for dismissal raised by the [recently dismissed Defendant in its Motion to Dismiss] are hereby adopted by reference and incorporated herein." (*Id.*). That Motion is roughly twenty pages, while Defendants' own Motion is eighteen pages. "Absent prior permission of the Court, . . . a motion and its incorporated memorandum of law . . . shall [not] exceed twenty (20) pages[.]" S.D. Fla. L.R. 7.1(c)(2).

---

[4] I have also considered Defendants' arguments that Plaintiff's "conspiracy to monopolize" theory "has no foundation or place in this case" and that the Amended Complaint is "an improper shotgun pleading." (DE 23 at 2). However, I decline to analyze those here, as Defendants failed to set forth a cogent argument for either ground and, instead, only mentioned the grounds in passing. And although the Amended Complaint appears to suffer from several deficiencies, Defendants failed to sufficiently challenge the deficiencies by asserting arguments supported by the applicable law.

Defendants' request to adopt the arguments set forth in a twenty-page Motion on top of its eighteen-page Motion is contrary to the spirit of this Local Rule, and as such granting that request would serve neither the interest of brevity nor the interest of conserving judicial resources.

Moreover, several arguments in the recently dismissed Defendant's Motion are tailored specifically to that Defendant and thus do not squarely apply to the remaining Defendants. Nevertheless, Defendants fail to parse out which arguments apply to them and why, and I decline to do so on their behalf. Finally, I note that Defendants attempted to adopt that Motion before it was even filed, which further supports the inference that Defendants failed to determine whether the arguments raised therein were applicable to them. Therefore, I will deny Defendants' request to incorporate these additional arguments regarding dismissal of the Amended Complaint.

## IV.   CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Defendants' Motion to Dismiss Amended Complaint (DE 23) is **DENIED**.

**SIGNED** in Chambers at West Palm Beach, Florida, this 4th day of August, 2021.

Donald M. Middlebrooks
United States District Judge

cc:   Counsel of Record